IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELYN MCKAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15 C 7970 |
| | ) | |
| VITAS HEALTHCARE CORPORATION OF ILLINOIS, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jacquelyn McKay is a former employee of Vitas Healthcare Corporation of Illinois. McKay has filed suit against Vitas, alleging discrimination, retaliation, and the creation of a hostile work environment in violation of both the Americans with Disabilities Act (ADA) and the Illinois Human Rights Act (IHRA). McKay has also alleged age discrimination in violation of the Age Discrimination in Employment Act (ADEA). Vitas has moved for summary judgment on all seven of McKay's claims. For the reasons stated below, the Court grants Vitas's motion.

### Background

The Court takes the following facts from the parties' briefs on summary judgment. When facts are in dispute, the Court takes those facts in the light most favorable to McKay.

Vitas is a Delaware corporation that provides hospice and palliative care in and around Chicago. McKay worked for Vitas in Lombard as a patient care secretary from

December 2002 until she was terminated on June 2014. When she applied to work at Vitas in 2002, she did not indicate that she had a disability or that she required an accommodation. Around April 2011, however, McKay was diagnosed with tinnitus, which is the perception of noise or ringing in the ears. This makes it difficult for her to hear in loud environments. McKay testified that her work environment at Vitas was loud and that she suffered from impaired hearing while at work. During her employment with Vitas, McKay did not take any medication or undergo medical treatment to alleviate this condition, nor did she wear hearing aids. She also testified that she had no difficulty performing any of her job duties at Vitas.

Both McKay and her co-workers recognized that she had difficulty hearing while at work. McKay's supervisor, Victoria Chrysokos, noticed that McKay was having trouble hearing and that sometimes McKay would not hear her, even at a distance of two or three feet. McKay also told Chrysokos that she had trouble hearing the telephones, particularly when there was background noise. The other patient care secretaries often asked McKay why she did not answer the phone, and she frequently had to ask them to repeat themselves. McKay never contacted anyone at Vitas to request an accommodation for her tinnitus.

McKay contends that, over the course of her time at Vitas, the other patient care secretaries began to discriminate against her due to her impaired hearing. McKay states that Christina Saldana would make loud comments in an irritated tone about McKay's inability to hear the others. Saldana would allegedly laugh at McKay or pound on her desk if McKay asked Saldana to repeat herself. McKay also states that the other patient care secretaries made derogatory comments about her based on her age.

McKay told Chrysokos, her supervisor, that she felt she was being harassed based on her inability to hear properly.  As a result, Chrysokos had a conversation with the other secretaries about the fact that they did not get along with McKay.  Despite this, McKay says, the behavior persisted.  In one particular incident in February 2014, McKay turned down the ringer of a phone that was bothering her.  Saldana allegedly stated, "Why do you care?  You can't hear anything half the time anyway."  On April 17, 2014, McKay reported this incident to Kelly Moriarty, one of Vitas's human resources employees, as evidence of discrimination and harassment.  Moriarty contacted Kellie Newman, a patient care administrator, who informed Moriarty that she had already spoken with the secretaries about their behavior.

    Vitas determines the size of its labor force based on a patient census.  When patient census is low, it typically implements a reduction in force.  In the spring of 2014, Vitas determined that it would need to implement a reduction in the Lombard office where McKay worked.  Vitas decided to eliminate one individual from each of the following positions:  team manager, social worker, chaplain, and patient care secretary.  Vitas's policy requires the company to consider performance first and seniority second when making termination decisions.  Vitas asked Moriarty to recommend a patient care secretary for termination.  Moriarty testified that she evaluated the personnel files of five patient care secretaries, looking specifically at the warnings (known as corrective actions) each employee had received and the scores from their most recent performance evaluations.  McKay had six corrective actions in her file, five of which she received between 2009 and 2014.  One other secretary had two corrective actions and the remaining three had none.  McKay also had the lowest performance appraisal

3

score. Her score was 2.2; the other secretaries' scores fell between 2.6 and 3.0. Of the five secretaries, McKay had worked at Vitas the longest, at least six more years than each of the other secretaries. Based on this evaluation, Moriarty decided to recommend McKay for termination. Vitas terminated McKay on June 6, 2014. At that time, McKay was the oldest patient care secretary.

McKay filed suit against Vitas asserting seven claims based on discriminatory behavior. In counts 1 and 4, McKay alleges that Vitas discriminated against her due to her disability in violation of the ADA and the IHRA. In counts 2 and 6, McKay alleges that Vitas terminated her as retaliation for her complaint of harassment in violation of the ADA and the IHRA. McKay alleges in counts 3 and 5 that she was subjected to a hostile work environment while at Vitas in violation of the ADA and the IHRA. Finally, in count 7, McKay alleges that Vitas discriminated against her based on her age in violation of the ADEA.

## Discussion

Summary judgment is appropriate when there is no issue of material fact such that the movant is entitled to judgment as a matter of law. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). Facts are viewed in the light most favorable to the non-moving party. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). Summary judgment is appropriate when no reasonable factfinder could find in favor of the non-moving party. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012).

Both parties agree that claims brought under the IHRA are governed by the same standards as claims under parallel federal discrimination statutes. *See* Def.'s Mem. in

Supp. of Mot. for Summ. J. at 14–15; Pl.'s Resp. at 15; *Owen v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 918, 936 N.E.2d 623, 639 (2010).  The Court therefore considers similar ADA and IHRA counts together for the purpose of summary judgment.

**I.      Counts 1 and 4**

In counts 1 and 4, McKay alleges that Vitas discriminated against her based on her disability in violation of the ADA and the IHRA.  McKay appears to allege that Vitas discriminated against her in two ways:  by failing to reasonably accommodate her tinnitus and by treating her differently than non-disabled employees.  To prevail, McKay first must show that she is disabled within the meaning of the ADA.  *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015); *Bunn v. Khoury Enters.*, 753 F.3d 676, 683 (7th Cir. 2014).  Vitas argues that McKay cannot do so because her tinnitus did not significantly impair her everyday life.

The ADA prohibits an employer from discriminating against a qualified individual on the basis of disability.  42 U.S.C. § 12112(a).  An individual is considered disabled if she (1) has a physical or mental impairment that substantially limits a major life activity; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  *Id.* § 12102(1).  Hearing qualifies as a major life activity.  29 C.F.R. § 1630.2(i)(1)(i).  "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  *Id.* § 1630.2(j)(1)(ii).  The impairment need only "substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population."  *Id.*

Vitas does not dispute that McKay has been diagnosed with tinnitus.  Vitas

argues, however, that McKay's hearing was not substantially limited because McKay "hears fine." Def.'s Stat. of Undisputed Facts (SUF) ¶ 8. Vitas points to McKay's testimony that she is able to care for herself, cook, and work as evidence that her tinnitus does not limit any life activity. Def.'s Mem. in Supp. of Mot. for Summ. J. at 5.

McKay has provided evidence sufficient to support an inference that her tinnitus substantially limited her hearing or that she was regarded as having a substantially limited ability to hear. McKay testified that she has difficulty hearing in loud environments. Pl.'s Stat. of Additional Facts (SAF), Ex. B (McKay Dep.) at 27:20–29:15. She also testified that she suffers from a constant ringing in both ears. *Id.* at 27:20–28:4. Further, McKay's supervisor testified that she noticed McKay had difficulty hearing. Chrysokos indicated that she had to speak more loudly to McKay and that McKay often did not hear Chrysokos speak to her from two to three feet away. Pl.'s SAF, Ex. C (Chrysokos Dep.) at 24:3–17, 49:9–17. McKay's co-worker, Heather McFall, testified that McKay asked her to repeat herself at least once a day. Pl.'s SAF, Ex. H (McFall Dep.) at 22:23–23:12. A reasonable factfinder could conclude from this evidence that McKay's hearing ability is substantially limited as compared to most people in the general population.

Much of the same evidence supports an argument that McKay was regarded as having an impairment. The "regarded as" component of the disability definition "is intended to provide a remedy for discrimination based on misperceptions about the abilities of impaired persons." *Krocka v. City of Chicago*, 203 F.3d 507, 513–14 (7th Cir. 2000). Even if, as Vitas argues, McKay was not actually limited in her ability to perform her work or other activities, there is evidence that her co-workers believed her to be

6

substantially limited. Both McKay's supervisor and the other secretaries believed that she frequently had difficulty hearing what others were able to hear. Chrysokos believed that McKay could not hear things she said when speaking just a few feet away. The other secretaries frequently commented on McKay's inability to hear the phones ringing or conversations among co-workers. This evidence is sufficient to support a finding that McKay was regarded as having a substantial hearing impairment.

### A. Failure to accommodate

To establish a claim for failure to accommodate, McKay must establish that: (1) she is a qualified individual with a disability; (2) Vitas was aware of her disability; and (3) Vitas failed to reasonably accommodate that disability. *See Preddie*, 799 F.3d at 813. McKay has presented sufficient evidence from which a reasonable factfinder could infer that she is a qualified individual with a disability. Vitas argues, however, that McKay did not need an accommodation to perform her job—and never requested one from Vitas— and therefore cannot hold Vitas liable for failure to accommodate her disability.

A plaintiff "typically must *request* an accommodation for his disability in order to claim that he was properly *denied* an accommodation under the ADA." *Id*. McKay admits that, on her initial application for employment with Vitas, she did not indicate that she had a disability or that she required an accommodation. Pl.'s Resp. to Def.'s SUF ¶ 12. McKay also admits that she never contacted anyone at Vitas to request an accommodation related to her tinnitus. *Id.* ¶ 15.

McKay argues that Vitas's obligation to accommodate her disability began as soon as it became aware that she was disabled and thus that her failure to request an accommodation is not fatal to her claim. Pl.'s Resp. at 5–6. The Seventh Circuit has

7

recognized an exception to the general rule that an employee must request an accommodation. *See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). This exception applies, however, only when the plaintiff's disability impairs her ability to communicate effectively regarding her need for an accommodation. *See Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996). McKay has not offered any evidence that her tinnitus impeded her ability to recognize that she needed an accommodation or her ability to ask for one. Thus the Court sees no basis to exempt McKay from the requirement that she request an accommodation. There is no evidence from which a reasonable factfinder could infer that Vitas knew of McKay's need for an accommodation and failed to provide her with one.

B.   **Disparate treatment**

McKay appears also to bring a claim of disparate treatment, alleging that Vitas terminated her while retaining other non-disabled employees. To sustain a claim of disparate treatment under the ADA, a plaintiff must show that: (1) she suffers from a disability; (2) she is qualified to perform the essential functions of the job; and (3) she has suffered an adverse employment action due to her disability. *Bunn*, 753 F.3d at 683. The Seventh Circuit recently eliminated the distinction between direct and indirect evidence in employment discrimination cases but retained the *McDonnell Douglas* burden-shifting framework. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, No. 15-2132, 2017 WL 129114, *4 (7th Cir. Jan. 13, 2017). Thus when an employer can offer a legitimate, non-discriminatory reason for the adverse action, the plaintiff must provide some evidence that the reason is pretextual. *Id*. at *5. Courts are to evaluate all the

8

evidence together and determine whether it would permit a reasonable factfinder to conclude that the plaintiff suffered an adverse employment action because of her disability. *Id.* at *4.

Vitas has provided substantial evidence that it had a legitimate, non-discriminatory reason for terminating McKay's employment. Near the time of McKay's termination, Vitas performed a census and determined that patient numbers were low. The company decided that it would eliminate four full-time positions, including one patient care secretary. Def.'s Reply to Pl.'s Resp. to Def.'s SUF, Ex. 5 (McKay Dep.) at Ex. 1. Vitas tasked Moriarty with recommending a patient care secretary for termination. *Id.* at 36:15–18. Moriarty assembled information on McKay and four other patient care secretaries. *Id.* at 77:22–79:23. She determined that McKay had six corrective actions in her file. *See id.* at Ex. 8. One other secretary had two corrective actions and the remaining three had none. *Id.* Moriarty also looked at the secretaries' most recent performance appraisal scores. McKay had received a score of 2.2 on a 3.0 scale. *See id.* The other four secretaries received scores between 2.6 and 3.0. Moriarty thus determined that McKay had the lowest overall performance within the group and recommended her for termination. *Id.* at 79:22–82:12.

McKay has failed to provide evidence from which a reasonable factfinder could conclude that this determination was pretextual and that Vitas actually fired her because of her disability. McKay first argues that there is evidence of suspicious timing, because Vitas terminated her seven weeks after she complained to human resources about Saldana's comments in February 2014. Pl.'s Resp. at 7–8. Though suspicious timing can support an inference of discriminatory intent, the Seventh Circuit has previously

9

held that a gap of six weeks is insufficient by itself to establish a causal connection. *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 952–53 (7th Cir. 2001) (considering a retaliation claim). The seven week gap is therefore insufficient to show that Vitas's decision was based on McKay's disability.

McKay next argues that Vitas cannot rely on Moriarty's decision-making process to defend itself against a charge of pretext. First, McKay points to Moriarty's testimony that employees are evaluated on a case-by-case basis for termination to argue that her objectively lower performance cannot be the reason for her termination. Pl.'s Resp. at 8. But Moriarty clearly testified that termination decisions are based on performance unless performance is equal, in which case the company considers seniority. Moriarty Dep. at 84:20–85:5. And McKay has not offered any evidence to suggest that Vitas does not follow this policy. Thus Moriarty used established company policy to make her termination recommendation. Further, McKay cannot show that she did not in fact have lower performance ratings than the other secretaries. Even if, as McKay argues, two of her warnings should have been less severe verbal warnings instead of written ones, she still had four more warnings than the next secretary. It is true that McKay had worked for Vitas longer than any other secretary, making it more likely that she would have the most warnings. But even if Moriarty narrowed the range of consideration to begin in 2010—the hire date for the newest secretary, Pamela Gerstmayr—McKay still received one more warning than Gerstmayr, the only other secretary with warnings. *See id.* And McKay scored 2.2 on her performance appraisal in comparison with Gerstmayr's perfect 3.0. *Id.* Thus McKay cannot show that Moriarty's recommendation did not adhere to Vitas's established policies.

McKay's final argument regarding discriminatory intent is that Moriarty, who recommended her termination, also fielded her April 2014 harassment complaint. Pl.'s Resp. at 9. But McKay has not provided any evidence—such as evidence that Moriarty made discriminatory comments about her disability—from which a reasonable jury could infer that Moriarty had discriminatory intent. And there is nothing out of the ordinary about the fact that Moriarty, a human resources representative, would be involved in harassment complaints as well as termination decisions. In short, McKay has not provided any evidence from which a reasonable factfinder could conclude that Moriarty's decision on McKay's termination was motivated by anything other than her performance.

Because McKay has not presented evidence from which a reasonable factfinder could conclude either that Vitas failed to accommodate her disability or that it terminated her because of her disability, the Court grants summary judgment to Vitas on counts 1 and 4.

## II. Counts 2 and 6

In counts 2 and 6, McKay alleges that Vitas fired her as retaliation for reporting harassment in violation of the ADA and the IHRA. The ADA "prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination." *Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012) (citing 42 U.S.C. § 12203(a)). McKay must show that: (1) she engaged in protected activity; (2) Vitas subjected her to an adverse employment action; and (3) there was a causal connection between the two. *See Povey*, 697 F.3d at 624. Again, the Seventh Circuit no longer distinguishes between direct and indirect evidence. The key question is

whether "the record contain[s] sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016).

Vitas concedes that McKay engaged in protected activity when she reported Saldana's comments to human resources and that her termination was an adverse employment action. Vitas argues that McKay cannot show that the two were causally connected, given its planned reduction in force and the process that Moriarty used to make her termination recommendation.

McKay has failed to show a causal connection between her complaint and her termination. She argues that she was meeting Vitas's legitimate expectations and was treated less favorably than similarly situated non-disabled employees. Pl.'s Resp. at 12–15. But, as discussed above, McKay had significantly lower performance than the other four secretaries considered for termination. Where an employer can show that the plaintiff would have been fired even absent her complaints about harassment, the plaintiff can survive summary judgment only if she can provide evidence of pretext. *Lord*, 839 F.3d at 564. McKay has failed to provide any such evidence. She has not shown that Moriarty failed to follow Vitas's termination policies when making her recommendation. Further, McKay has not provided any evidence to suggest that Vitas did not need to terminate a patient care secretary under its reduction in force or that another secretary with a similar performance record was kept on while she was not. Thus no reasonable factfinder could conclude that Vitas's otherwise legitimate reason for McKay's termination was a pretext for disability discrimination. The Court grants summary judgment to Vitas on counts 2 and 6.

**III.     Counts 3 and 5**

In counts 3 and 5, McKay alleges that she was subjected to a hostile work environment in violation of the ADA and the IHRA.  The Seventh Circuit has assumed without deciding that the ADA recognizes a claim for hostile work environment.  *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005).  A hostile work environment exists "where an employee experiences harassment that is so severe or pervasive as to alter the conditions of employment and create an abusive working environment."  *Id.* (internal quotation marks omitted).  The plaintiff must demonstrate that the workplace was both subjectively and objectively hostile.  *Id.*

Even taking all of McKay's assertions as true, she has failed to provide evidence of conduct that is sufficiently pervasive and severe to create an abusive working environment.  McKay reported a single incident to human resources—an interaction in which Saldana asked McKay why she cared about the volume of a phone when she doesn't "hear anything half the time anyways."  McKay Dep. at 247:18–24.  Though this comment was inconsiderate, by itself it does not rise to the level of severity necessary to find a hostile work environment.  *See Lloyd v Swifty Transp., Inc.*, 552 F.3d 594, 599, 603 (7th Cir. 2009) (finding that co-worker's comment that another employee should "fall over" like the plaintiff so he could "get paid" without working did not create a hostile work environment).  McKay also testified that the following conduct by the other secretaries contributed to a hostile work environment:

- Slamming the table or laughing when she asked them to repeat themselves, McKay Dep. at 49:17–50:2, 75:2–5;

- Making fun of her coughing, *id.* at 72:5–8;

- Positioning chart racks so that she had to walk around them to leave the area, *id.* at 103:3–106:11.

Though this behavior might be unprofessional, it does not rise to the level of severity required to find an actionable hostile working environment. *See Mannie*, 394 F.3d at 982–83 (finding that derogatory comments and behavior offensive to plaintiff was neither pervasive nor severe); *Russell v. Bd. of Trs. of Univ. of Ill. at Chicago*, 243 F.3d 336, 344 (7th Cir. 2001) (demeaning comments in sex discrimination case, though "hardly admirable," did not meet the hostile work environment standard).

In arguing that the harassment was severe enough to create an objectively hostile work environment, McKay points to Newman's testimony that the reported comment by Saldana could be classified as harassment if she knew that McKay had a hearing impairment. Pl.'s Resp. at 11–12; *see also* Pl.'s Resp. to Def.'s SUF, Ex. F (Newman Dep.) at 42:14–43:9. This testimony is not evidence that the work environment was objectively hostile. At most, it shows only that one of Saldana's comments qualifies as harassing. But the law "does not prohibit all verbal or physical harassment in the workplace." *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999). Rather, the law prohibits only harassment that is severe enough to create an objectively abusive working environment. *Id.* McKay has failed to provide sufficient evidence from which a reasonable factfinder could conclude that the harassment was objectively pervasive and severe so as to create an abusive work environment. The Court grants summary judgment to Vitas on counts 3 and 5.

### IV.     Count 7

In count 7, McKay alleges that Vitas's decision to terminate her employment also constitutes age discrimination in violation of the ADEA. She argues that she was the

oldest of the patient care secretaries and was the only one terminated. Pl.'s Resp. at 9. Thus, McKay contends, she was treated less favorably than similarly situated younger employees.

To prove a claim of age discrimination, the plaintiff must provide evidence "that an employer took an adverse job action against him because of his age." *Grimm v. Alro Steel Corp.*, 410 F.3d 383, 385 (7th Cir. 2005). In evaluating these claims, courts can employ the same *McDonnell Douglas* framework used for disability claims. *See id*. Thus if Vitas can offer a legitimate, non-discriminatory reason for McKay's termination, McKay must provide evidence that this reason is pretextual. *See id*.

As detailed above, Vitas has provided ample evidence that its decision to terminate McKay was based on a reduced patient census and McKay's low performance ratings. And as the Court has discussed, McKay has failed to provide any evidence that this reason was pretextual. The mere fact that all the other secretaries were younger than McKay is insufficient to meet this standard. Further, McKay mentions only once incident of allegedly discriminatory conduct based on her age. *See* McKay Dep. at 57:19–58:2 (testifying that Saldana, a co-worker, once said "oh, granny, you can't hear good anymore"). Standing alone, this incident is insufficient to cast doubt on Vitas's legitimate and well-supported reason for her termination. No reasonable factfinder could infer that McKay was terminated due to her age. The Court grants summary judgment to Vitas on count 7.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary

judgment [dkt. no. 24] and directs the Clerk to enter judgment in favor of defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 7, 2017